IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DIANE LOUISE HALL      *
                       *
       v.              *     Civil Case No. GLR-17-3616
                       *
COMMISSIONER, SOCIAL SECURITY[1]  *
                       *
*************

REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). [ECF No. 4]. I have considered both parties' motions for summary judgment and the reply filed by Ms. Hall, who proceeds *pro se*. [ECF Nos. 15, 16, 18]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). For the reasons set forth below, I recommend that the Social Security Administration's ("SSA's") motion be granted and that the SSA's judgment be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Ms. Hall protectively filed applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") in September, 2014, alleging an onset date of August 5, 2009. (Tr. 175-81). Ms. Hall later amended her alleged onset date to December 15, 2009. (Tr. 40). Her applications were denied initially, and her DIB application was denied on

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

reconsideration.[2] (Tr. 67-77, 79-97, 101-12, 114-15). An Administrative Law Judge ("ALJ") held a hearing on January 25, 2017, at which Ms. Hall was represented by counsel. (Tr. 36-66). Following the hearing, the ALJ determined that Ms. Hall was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 17-31). The Appeals Council denied Ms. Hall's request for review, (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. Hall suffered from the severe impairments of "bilateral Carpal Tunnel Syndrome (CTS); degenerative changes of the cervical and lumbosacral spine; Bipolar Disorder; and Anxiety Disorder." (Tr. 20). Despite these impairments, the ALJ determined that Ms. Hall retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) with frequent operation of hand controls; no climbing of ladders, ropes or scaffolds; no crawling; no working at unprotected heights; tasks that are simple, routine and repetitive; and no more than simple work related decisions.

(Tr. 24). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Hall could not perform any past relevant work, but could perform other jobs existing in significant numbers in the national economy, including the jobs of cashier, sales attendant, and housekeeping cleaner. (Tr. 29-30). Therefore, the ALJ concluded Ms. Hall was not disabled. (Tr. 30-31).

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the SSA's decision generally comports with regulations, (2) reviewing the ALJ's critical

---

[2] Ms. Hall did not seek reconsideration of her SSI claim, following a finding that her husband's income exceeded the limits, rendering her ineligible. (Tr. 101). At the hearing, Ms. Hall's attorney asked that the SSI claim be merged and reopened. (Tr. 40-41). Although the ALJ did not reference that request in the opinion, the standard for disability is the same, and there is no evidence in the record suggesting that the family's income level ever fell below the eligibility limits.

2

findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). For the reasons described below, substantial evidence supports the ALJ's decision.

The ALJ proceeded in accordance with applicable law at all five steps of the sequential evaluation. At step one, the ALJ found in Ms. Hall's favor that she had not engaged in substantial gainful activity during the period from her amended alleged onset date of December 15, 2009, through her date last insured of December 31, 2014. (Tr. 19). At step two, the ALJ found the severe impairments listed above. (Tr. 20). The ALJ also assessed Ms. Hall's left shoulder pain, sleep apnea, overactive bladder, vision disturbance and migraine headaches, and fibromyalgia to be either not medically determined (due to a lack of formal diagnosis) or non-severe. (Tr. 20-21). A thorough review of the record does not demonstrate any significant functional limitations relating to those conditions during the relevant time frame (and meeting the required 12-month duration). Accordingly, I find no error in the ALJ's step two analysis.

At step three, the ALJ assessed whether any listings were met or equaled. (Tr. 21-23). The ALJ specifically considered Listings 1.02 and 1.04 as they pertained to Ms. Hall's carpal tunnel syndrome and back impairments, but cited to evidence in the record supporting that specific criteria of those listings had not been met. (Tr. 21). The ALJ also appropriately applied the special technique for evaluation of the listings relating to mental impairments, and considered Listings 12.04, 12.06, and 12.15. Each of those listings applies the same framework relating to functional limitations. The ALJ provided record citations to support his conclusions that Ms. Hall had "mild" difficulty understanding, remembering, and applying information, interacting with others, and adapting and managing oneself, and "moderate" limitations maintaining concentration, persistence, or pace. (Tr. 22-23). I find no error in the ALJ's thorough listings analysis.

At step four, the ALJ determined Ms. Hall's RFC. The function of this Court is not to review Ms. Hall's claims *de novo* or to reweigh the evidence of record. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) (citing 42 U.S.C. § 405(g), and *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972)). Rather, this Court is to determine whether, upon review of the whole record, the SSA's decision is supported by substantial evidence and a proper application of the law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Coffman*, 829 F.2d at 517; *see also* 42 U.S.C. § 405(g). Although there might also be evidence in the record from which a contrary conclusion could be drawn, applying that deferential standard to the evidence in this case, the ALJ's conclusions must be affirmed.

The ALJ provided a summary of Ms. Hall's background from her testimony, her written submissions, and her medical records. (Tr. 24-28). The summary included a comprehensive discussion of the medical evidence derived from the treatment notes recorded by Ms. Hall's treating and examining doctors. (Tr. 25-27). The ALJ noted that those records reflected Ms. Hall's history of refusing to follow medical advice, both as to her psychiatric care and as to recommendations for carpal tunnel surgery. *Id.* Ms. Hall did not engage in counseling as recommended repeatedly, and did not take her medications as prescribed. (Tr. 26). Finally, the ALJ evaluated and assigned weight to the opinions of the State agency physicians, Ms. Hall's hand surgeon, and the various Global Assessment of Function ("GAF") scores in the record. (Tr. 28-29). The ALJ ultimately concluded that Ms. Hall had more limitations than believed by the State agency physicians, but also concluded that the opinions from Ms. Hall's hand surgeon were only entitled to "little weight," as a result of her ability to work and her noncompliance with medical recommendations. (Tr. 28). This Court is not permitted to reweigh the evidence. *See Smith*, 795 F.2d at 345. The opinions of the State agency physicians, in addition to the

supporting treatment records and Ms. Hall's ability to perform work on a part-time basis and to manage her household, provide substantial evidence to support the ALJ's conclusion.

Next at step four, the ALJ concluded, based on the testimony of the vocational expert, that Ms. Hall could not perform her past, semi-skilled relevant work. (Tr. 29). However, the ALJ conducted an inquiry under step five of the sequential evaluation and found other jobs that Ms. Hall could perform. (Tr. 29-30). In response to a hypothetical posed by the ALJ, which matched the RFC the ALJ later determined, the VE cited several jobs, including unskilled cashier, sales attendant, and housekeeper cleaner. (Tr. 30). The ALJ relied on that VE testimony in his opinion. *Id.* The ALJ's step five determination, therefore, was supported by substantial evidence.

Finally, I note that Ms. Hall submitted a letter containing information about her medical and personal history, and attaching a "problems report" from Medstar Franklin Square Medical Center, dated September 4, 2014, that was not part of the administrative record considered by the ALJ. In the context of this appeal, this Court cannot consider evidence that was not before the Commissioner, except under very limited circumstances where the evidence is both new and material. *See Smith v. Chater*, 99 F.3d 635, 638, n.5 (4th Cir. 1996). To establish that the evidence was material, Ms. Hall would have to show that the evidence might reasonably have changed the decision of the Commissioner. *See Wilkins v. Sec'y, Dep't of Health and Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991); 42 U.S.C. § 405(g). Here, the "problems report" essentially summarizes other medical records that were part of the case file, including the repeated suggestions from the doctor that Ms. Hall take appropriate psychiatric medications and undergo counseling, and the notes confirming that Ms. Hall declined a surgical referral or injections for her carpal tunnel syndrome. Ms. Hall stated that she found the "problems report" on July 26, 2018. Even assuming that her delay in locating the report constitutes "good cause"

for her failure to present that evidence in the prior proceeding, *see* 42 U.S.C. § 405(g), there is no reasonable possibility that the new evidence would have changed the outcome, *see Wilkins*, 953 F.2d at 96. The summary report does not contain any information materially different from that already in the record. Accordingly, there is no viable basis for remand under sentence six of 42 U.S.C. § 405(g), and I recommend the SSA's decision be affirmed.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment [ECF No. 16];

2. the Court DENY Plaintiff's Motion for Summary Judgment [ECF No. 15];

3. the Court AFFIRM the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g); and

4. the Court close this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated: August 23, 2018                    /s/
                                          Stephanie A. Gallagher
                                          United States Magistrate Judge